NO. COA13-1321

NORTH CAROLINA COURT OF APPEALS

Filed:  7 October 2014

HANS KINDSGRAB,
      Petitioner-Appellant,

      v.                              Wake County
                                      No. 12 CVS 16903
STATE OF NORTH CAROLINA BOARD OF
BARBER EXAMINERS,
      Respondent-Appellant.


      Appeals by petitioner and respondent from orders entered 3 May 2013 and 11 September 2013 by Judge Howard E. Manning, Jr., in Wake County Superior Court.  Heard in the Court of Appeals 23 April 2014.


      *Harris & Hilton, P.A., by Nelson G. Harris, for petitioner-appellant.*

      *N.C. Board of Barber Examiners, by W. Bain Jones, Jr., and Allen, Pinnix & Nichols, P.A., by M. Jackson Nichols and Catherine E. Lee, for respondent-appellant.*


      McCULLOUGH, Judge.


      Hans  Kindsgrab  ("petitioner")  appeals  from  the  Order  On Petition For Judicial Review filed 11 September 2013.  The State of North Carolina Board of Barber Examiners ("respondent" or "the Board") appeals from the interlocutory order denying its Motion To Dismiss Petition For Judicial review filed 3 May 2103 and  from  the  Order  On  Petition  For  Judicial  Review  filed  11

September 2013.  For the following reasons, we affirm in part and reverse in part.

## I.    Background

Petitioner is an owner of Maybe Someday, Inc., which owns and operates franchises of "The Barbershop – A Hair Salon for Men" at three locations in the triangle area – Cary, Durham, and Raleigh.  At all times relevant to this appeal, each location held a Cosmetic Arts Salon License issued by the North Carolina State Board of Cosmetic Art Examiners.

In 2012, an investigation by barber examiner William Graham revealed that the Cary and Raleigh locations displayed barber polls and advertised barber services without barber permits and without licensed barbers on the premises.  As a result, Graham issued "Notice[s] Of Violation[s]" to the Raleigh and Cary locations on 31 July 2012 specifying fraudulent misrepresentation in violation of N.C. Gen. Stat. § 86A-20 and N.C. Admin. Code tit. 21, r. 60.0107.  Following the notices issued by Graham, on 7 September 2012, the Board sent petitioner a Notification of Probable Cause to Fine and ordered petitioner to pay civil penalties, attorney's fees, and costs.

By letter to the Board dated 2 October 2012, petitioner requested an administrative hearing to contest the fraudulent

misrepresentation charges. On 3 October 2012, the Board responded to petitioner by letter providing notice that an administrative hearing had been scheduled for 22 October 2012. The hearing took place as scheduled.

Following the 22 October 2012 hearing, the board issued its Final Decision on 6 November 2012. Among the conclusions issued by the board were the following:

> 10. Petitioner must comply with the statutes and administrative rules concerning barber shops, barbering services and use of a barber pole.
>
> 11. The preponderance of the evidence established that it [sic] the Board properly cited Petitioner for misrepresenting itself as a barber shop or barber salon when it failed to have a barber shop permit and a licensed barber at each of its franchise locations in Cary and Raleigh.

The Board then ordered petitioner to "pay one thousand dollars ($1,000.00) in civil penalties for fraudulent misrepresentations concerning attempts to barber and provide barber services without a shop permit and a licensed barber on the premises at the Cary and Raleigh locations[, five hundred dollars ($500.00) per location,]" and to "pay one thousand six hundred fifty dollars ($1,650.00) in attorney's fees and costs for services rendered by the Board Counsel and staff."

On 3 December 2012, petitioner filed a Petition For Judicial Review in Wake County Superior Court seeking review of the Board's Final Decision. After numerous motions by both sides attempting to settle the record, on 26 April 2013, respondent filed a Motion To Dismiss Petition For Judicial Review on the basis that petitioner failed to "specifically state the grounds for exception[.]" Respondent's motion to dismiss came on to be heard with the motions to settle the record on 3 May 2013. Following the hearing, the trial court filed an order denying respondent's motion to dismiss.

Respondent's Petition For Judicial Review came on to be heard in Wake County Superior Court before the Honorable Howard E. Manning, Jr., on 4 September 2013.

In an Order On Petition For Judicial Review filed 11 September 2013, the trial court affirmed the Board's Final Decision in part and reversed in part. Specifically, the trial court found the Board's findings to be supported by substantial evidence and found the board's conclusions to be supported by the findings of fact and the whole record. The trial court also made the following more specific findings:

> 4. The Court affirms in part Paragraph 1 of the Order portion of the Final Agency Decision which holds that Petitioner's businesses, The Barber Shop – A Hair Salon

For Men, were providing barber services without a barber shop permit and a licensed barber on the premises at Respondent's Cary and Raleigh locations.

5. The Court affirms in part the Final Agency Decision, which holds that Petitioner is not allowed to use or display a barber pole for the purpose of offering barbering services, and Petitioner is ordered to remove the barber pole unless licensed by Respondent Board.

6. The Court affirms in part the Final Agency Decision which holds that Petitioner's businesses, advertising of its services as a barber shop is a misrepresentation and confusing and deceptive to the consuming public, and Petitioner is ordered to remove and cease such advertisements unless licensed by Respondent Board.

7. The Court reverses in part the Final Agency Decision in its imposition of fines because the Court concludes that Respondent Board does not have the statutory authority to impose fines on persons or entities not licensed by the Board.

8. The Court reverses in part the Final Agency Decision in its imposition of attorney fees and costs for services rendered by the Board Counsel and staff because the Court concludes that Respondent Board does not have the statutory authority to impose such fees and costs on persons or entities not licensed by the Board.

Based on these findings, the trial court ordered the imposition of civil penalties and the award of attorney's fees and costs

for services be reversed. Both petitioner and respondent appealed.

## II. Discussion

"When reviewing a superior court order concerning an agency decision, we examine the order for errors of law. The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Poarch v. N.C. Dep't of Crime Control & Pub. Safety*, _ N.C. App. _, _, 741 S.E.2d 315, 318 (2012) (quotation marks and citations omitted).

## A. Petitioner's Appeal

The sole issue raised on appeal by petitioner is whether the trial court exceeded the permissible scope of review when it ordered him to remove the barber pole and cease advertising barber services unless licensed by the Board. Petitioner contends the trial court did and that those portions of the trial court's order must be reversed. We agree.

N.C. Gen. Stat. § 150B-51 governs the scope of judicial review of an agency decision. It provides in pertinent part:

> (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial

rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

(c) In reviewing a final decision in a contested case, the court shall determine whether the petitioner is entitled to the relief sought in the petition based upon its review of the final decision and the official record. With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court shall conduct its review of the final decision using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.

N.C. Gen. Stat. § 150B-51 (2013).

Pursuant to N.C. Gen. Stat. §§ 86A-5 & -27, the Board has the power to assess civil penalties. *See* N.C. Gen. Stat. § 86A-

5(a)(6) (2013). The Board does not, however, have the power to issue injunctions. Thus, in accordance with its powers, the Board did not enjoin petitioner, but simply found petitioner was properly cited for fraudulent misrepresentations and ordered petitioner to pay civil penalties, attorney's fees, and costs.

As detailed more fully above, petitioner petitioned the trial court to review the Board's assessment of civil penalties, attorney's fees, and costs. Upon reviewing the case, the trial court reversed portions of the Board's Final Decision and held the Board did not have the statutory authority to impose civil penalties, attorney's fees, and costs on non-licensees. The trial court did, however, affirm the Board's conclusions that petitioner was subject to the Barber Act, Chapter 86A of the General Statues, and violated certain rules related to advertising barber services. Yet, in addition to affirming those portions of the Board's Final Decision related to advertising, the trial court ordered petitioner to remove the barber pole and cease advertising barber services unless licensed by the Board.

Defendant now contends the decretal portions of the trial court's order ordering the removal of the barber pole and

cessation of advertising barber services were beyond the scope of the trial court's review.

Although the Barber Act provides an avenue for the Board to seek an injunction in superior court, see N.C. Gen. Stat. § 86A-20.1 (2013) ("The Board . . . may apply to the superior court for an injunction to restrain any person from violating the provisions of this Chapter or the Board's rules."), respondent concedes that it did not pursue that avenue, nor raise the issue in the underlying contested case. Nevertheless, citing *In re Alamance County Court Facilities*, 329 N.C. 84, 94, 405 S.E.2d 125, 129 (1991) ("Generally speaking, the scope of a court's inherent power is its 'authority to do all things that are reasonably necessary for the proper administration of justice.'") (quoting *Beard v. N.C. State Bar*, 320 N.C. 126, 129, 357 S.E.2d 694, 696 (1987)), respondent contends that it was within the inherent power of the court to enjoin petitioner from displaying the barber pole and advertising barber services. We disagree.

Given that N.C. Gen. Stat. § 86A-20.1 provides an avenue for respondent to seek an injunction and respondent did not pursue that avenue, we hold the trial court, acting on its own to issue relief outside the authority of the Board, acted

outside the scope of review provided in N.C. Gen. Stat. § 150B-51. The only issues before the trial court for review were those issues decided by the Board – the assessment of civil penalties, attorney's fees, and costs. As a result, we reverse those portions of the trial court's order that mandate petitioner remove the barber pole and cease advertising barber services.

## B.    Respondent's Appeal

In respondent's appeal, respondent first argues the trial court erred in its 3 May 2013 order by denying its Motion To Dismiss Petition For Judicial Review. Specifically, respondent contends dismissal was appropriate because petitioner failed to make specific exceptions to the Board's Final Decision.

N.C. Gen. Stat. § 150B-46 governs the contents of petitions for judicial review from final agency decisions. It provides, "[t]he petition shall explicitly state what exceptions are taken to the decision or procedure and what relief the petitioner seeks." N.C. Gen. Stat. § 150B-46 (2013). This Court has recognized that "'[e]xplicit' is defined in this context as 'characterized by full clear expression: being without vagueness or ambiguity: leaving nothing implied.'" *Gray v. Orange County Health Dept.*, 119 N.C. App. 62, 70, 457 S.E.2d 892, 898 (1995)

(quoting *Vann v. N.C. State Bar*, 79 N.C. App. 173, 173-74, 339 S.E.2d 97, 98 (1986)). Applying that definition of explicit in both *Gray* and *Vann,* this Court held the trial courts erred in denying the respondents' motions to dismiss because the petitions at issue were not "sufficiently explicit" to allow effective judicial review where the petitioners did not except to particular findings of fact, conclusions of law, or procedures. *Gray*, 119 N.C. App. at 71, 457 S.E.2d at 899, *Vann*, 79 N.C. App. at 174, 339 S.E.2d at 98.

Respondent now argues for a similar result in the present case because petitioner did not take exception with specific findings of fact, conclusions of law, or procedures. Respondent claims petitioner made only general assertions of error that fail to meet the required standards of specificity under N.C. Gen. Stat. § 150B-46. We disagree.

Although petitioner did not except to specific findings or conclusions by the Board, petitioner clearly stated exceptions to the Board's Final Decision. These exceptions include the following:

> a. Petitioner is not a licensed or registered barber (hereinafter "a Licensee"), and the Board's powers over individuals who are not Licensees are limited to making a criminal referral alleging a violation of N.C.G.S. § 86A-20,

or seeking injunctive relief from the Court as provided for under N.C.G.S. § 86A-20.1. The Board's imposition of fines and costs on Petitioner is beyond the power granted by the General Assembly; the Final Decision is in excess of the statutory authority or jurisdiction of the Board, and, in accordance with N.C.G.S. § 150B-51(b)(2), the Final Decision must be reversed.

b.   Even if N.C.G.S. § 86A-27 applies to individuals who are not Licensees, N.C.G.S. § 86A-27(d) specifically provides that the Board may only impose fees and costs on "the licensee", and Petitioner is not a Licensee. Under the circumstances, imposition of costs and attorney's fees on Petitioner is in excess of the statutory authority or jurisdiction of the Board, and, in accordance with N.C.G.S. § 150B-51(b)(2), the Final Decision must be reversed.

c.   N.C.G.S. § 86A-14 provides:

The following persons are exempt from the provisions of this Chapter while engaged in the proper discharge of their duties:

. . . .

(5) Persons who are working in licensed cosmetic shops or beauty schools and are licensed by the State Board of Cosmetic Art Examiners.

As the Board recognizes, each of Maybe Someday's locations has a Cosmetic Arts Salon License through Petitioner, and, therefore, in accordance with the provisions of N.C.G.S. § 86A, Petitioner is exempt from the provisions of the Barber Act. Under the circumstances, the Final Decision is in excess of the statutory authority or jurisdiction of the Board, and, in

accordance with N.C.G.S. § 150B-51(b)(2), and [sic] it must be reversed.

d. A primary basis for the Board's contention that Petitioner was "attempting to barber by fraudulent misrepresentations" is that Maybe Someday's locations have a "barber pole" in the reception area, without a barber permit for the shop. With respect to the use of the "barber pole", the Board holds that 21 NCAC 06Q.0101 "states that no person shall use or display a barber pole for the purpose of offering barbering services to the consuming public without a barber shop permit." In fact, 21 NCAC 06Q.0101 does not state anything of the sort. The cited section of the North Carolina Administrative Code simply provides "[e]very establishment permitted to practice barbering shall display at its main entrance a sign which is visible from the street, and whose lettering is no small[er] than three inches, stating 'barber shop,' 'barber salon,' 'barber styling' or similar use of the designation, 'shop, salon or styling' or shall display a 'barber pole' . . [. .]" Thus, the cited section of the North Carolina Administrative Code imposes obligations on barbers, it does not prohibit any act by individuals who are not Licensees.

. . . .

Under the circumstances, the Final Decision, in accordance with the provisions of N.C.G.S. § 150B-51(b)(2), and/or N.C.G.S. § 150B-51(b)(4), and/or N.C.G.S. § 150B-51(b)(6), must be reversed.

Considering these exceptions in the context of the petition, we find the Petition For Judicial Review "sufficiently

explicit" to allow effective judicial review. Thus, we hold the trial court did not err in denying respondent's motion to dismiss.

In the second issue raised by respondent on appeal, respondent argues the trial court erred in concluding that "Respondent Board does not have the statutory authority to impose such fines on persons or entities not licensed by the Board." Upon review of the statutes, regulations, and relevant law, we agree.

Among the powers and duties assigned to the Board is the power "to assess civil penalties pursuant to [N.C. Gen. Stat. §] 86A-27." N.C. Gen. Stat. § 86A-5(a)(6). N.C. Gen. Stat. § 86A-27(a) in turn provides, in pertinent part, "[t]he Board may assess a civil penalty not in excess of five hundred dollars ($500.00) per offense for the violation of any section of this Chapter or the violation of any rules adopted by the Board." N.C. Gen. Stat. § 86A-27 (2013).

A plain reading of N.C. Gen. Stat. § 86A-27(a) reveals no indication that the imposition of civil penalties is limited solely to licensees. In fact, as respondent points out, where portions of the statute are intended to apply exclusively to licensees, the statute unambiguously provides for it; for

example, N.C. Gen. Stat. § 86A-27(d), which governs the assessment of attorney's fees and costs in Board proceedings, provides that "[t]he Board may in a disciplinary proceeding charge costs, including reasonable attorneys' fees, *to the licensee* against whom the proceedings were brought." N.C. Gen. Stat. § 86A-27(d) (emphasis added). Where there is no limiting language in N.C. Gen. Stat. § 86A-27(a), we will not read limiting language into the statute.

Moreover, N.C. Gen. Stat. § 86A-27(c) provides that "[t]he Board shall establish a schedule of civil penalties for violations of this Chapter and rules adopted by the Board." The Board has done so beginning with N.C. Admin. Code tit. 21, r. 60.0101. As argued by respondent, the rules promulgated by the Board pursuant to the Administrative Procedure Act, Chapter 150B of the General Statutes, indicate that fines may be imposed on non-licensees. *See* N.C. Admin. Code tit. 21, r. 60.0102 (June 2014) (setting forth a schedule of civil penalties for operating a barber shop without first filing an application for a barber shop license or without a valid permit).

Particularly relevant to this case, the schedule of civil penalties provides that "[t]he presumptive civil penalty for barbering or attempting to barber by fraudulent

misrepresentations . . . : 1st offense $500.00." N.C. Admin. Code tit. 21, r. 6O.0107 (June 2014). A subsequent regulation explains that

> [e]xcept as provided in Chapter 86A of the General Statutes, the Board:
>
> (1) will find fraudulent misrepresentation in the following examples:
>
> (a) An individual or entity operates or attempts to operate a barber shop without a permit;
>
> (b) An individual or entity advertises barbering services unless the establishment and personnel employed therein are licensed or permitted;
>
> (c) An individual or entity uses or displays a barber pole for the purpose of offering barber services to the consuming public without a barber shop permit[.]
>
>  . . . .

N.C. Admin. Code tit. 21, r. 6Q.0101 (June 2014). Thus, it is clear from the Board rules that civil penalties may be assessed for violations by an "individual or entity", not just against those licensed by the Board.

In response to respondent's argument, petitioner argues that if the Board has statutory authority to impose civil penalties on non-licensees, that authority is unconstitutional

because it constitutes a grant of judicial power to the Board that is not "reasonably necessary" to accomplish the Board's purpose.

North Carolina's Constitution provides that "[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other." N.C. Const. art. I, § 6. As our Supreme Court explained in *State, ex rel Lanier, Comm'r of Ins. v. Vines*, 274 N.C. 486, 164 S.E.2d 161 (1968),

> The legislative authority is the authority to make or enact laws; that is, the authority to establish rules and regulations governing the conduct of the people, their rights, duties and procedures, and to prescribe the consequences of certain activities. Usually, it operates prospectively. The power to conduct a hearing, to determine what the conduct of an individual has been and, in the light of that determination, to impose upon him a penalty, within limits previously fixed by law, so as to fit the penalty to the past conduct so determined and other relevant circumstances, is judicial in nature, not legislative.

*Id.* at 495, 164 S.E.2d at 166. Our Constitution, however, also provides that "[t]he General Assembly may vest in administrative agencies established pursuant to law such judicial powers as may be reasonably necessary as an incident to the accomplishment of the purposes for which the agencies were created." N.C. Const.

art. IV, § 3. "Whether a judicial power is 'reasonably necessary as an incident to the accomplishment of the purposes for which' an administrative office or agency was created must be determined in each instance in the light of the purpose for which the agency was established and in the light of the nature and extent of the judicial power undertaken to be conferred." *Lanier*, 274 N.C. at 497, 164 S.E.2d at 168.

What began as a narrow interpretation of "reasonably necessary" in *Lanier* has since become more liberal, permitting administrative agencies guided by proper standards to exercise discretion in assessing civil penalties. *See In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 381-82, 379 S.E.2d 30, 35 (1989). Applying the less mechanical approach in *In re Civil Penalty*, our Supreme Court upheld a civil penalty imposed by the North Carolina Department of Natural Resources and Community Development for violations of the Sedimentation Pollution Control Act as reasonably necessary. *Id*.

As petitioner states, "[t]he purposes of the Board are to license barbers and to prevent anyone who is not licensed as a barber from practicing barbering." *See* N.C. Gen. Stat. § 86A-1

(2013).  As with most agencies, these purposes serve to protect the public.

Now on appeal, petitioner contends the Board has all the tools necessary to accomplish its purposes by referring non-licensees engaged in the practice of barbering for criminal prosecution pursuant to N.C. Gen. Stat. § 86A-20 and seeking to enjoin non-licensees from practicing barbering pursuant to N.C. Gen. Stat. § 86A-20.1.  While we recognize that N.C. Gen. Stat. §§ 86A-20 & -20.1 provide means to accomplish the Board's purposes, they are not the exclusive means.  As the Court noted in *In re Civil Penalty*, other avenues to prohibit violations, such as injunctions, take time during which irreparable damage may occur.  "The power to levy a civil penalty is therefore a useful tool, since even the threat of a fine is a deterrent." 324 N.C. at 381, 379 S.E.2d at 35.

Similarly, in this case we hold that the imposition of civil penalties on non-licensees is reasonably necessary for the Board to serve its purpose of preventing non-licensees from engaging in the practice of barbering.

## III. Conclusion

For the reasons discussed above, we affirm the trial court in part and reverse in part.

Affirmed in part; reversed in part.

Judges CALABRIA and ELMORE concur.